PENNOCK (COE v.). See Case No. 2,942.

---

## Case No. 10,941.

### PENNOCK et al. v. DIALOGUE.

[4 Wash. C. C. 538; 1 Robb, Pat. Cas. 466; Merw. Pat. Inv. 412.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1825. [2]

PATENTS — PROOF OF INVENTION—COMBINATION—SIMILARITY IN PRINCIPLE—ABANDONMENT—EVIDENCE.

1. In an action for a violation of a patent right, proof that the plaintiffs at a particular time made a specimen of the thing patented, which had not been seen or heard of by the witness, is prima facie evidence that it was invented by the patentee.

2. It is unimportant whether the experiment or use of the thing invented and patented was first made by the inventor, or by any other person.

3. If old materials and old principles be used in a state of combination to produce a new result, the inventor may obtain a valid patent for such result.

[Cited in Whitney v. Emmett, Case No. 17,-585.]

[Cited in brief in Rheem v. Holliday, 16 Pa. St. 350.]

4. It is for the jury to say whether the thing patented, and any other thing resembling it be the same in principle. If they be, still if that other asserted by the defendant to have preceded the plaintiff's alleged discovery be the same in principle, it will not avoid the plaintiff's patent, unless it is proved that it was in use.

5. Suggestions made by the mechanic to construct the machine, as to its form or proportions, are not sufficient to invalidate the patent: although they may be incorporated in the specification.

[Cited in Watson v. Bladen, Case No. 17,277; Whitney v. Emmett, Id. 17,585.]

6. If an inventor before he obtains a patent, makes his discovery public, and permits the free use of it by others without objection, or assertion of claim to the invention, of which the public might take notice, he abandons his right to the discovery; and a patent can give him no title to the monopoly; and it makes no difference, that the article so made and publicly used, was made by a particular person, by the permission of the inventor.

[Cited in Whitney v. Emmett, Case No. 17,-585.]

7. Minutes of a hose company of which the plaintiffs were members, and at whose instigation and expense the hose, the subject of the patent, was asserted to have been invented, may be read on the part of the defendant, to prove the plaintiffs were not the inventors.

8. But other entries made at other times in the same books, cannot be read to prove that the company acknowledge the plaintiffs to be the inventors, (the defendant not having been a

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq. Merw. Pat. Inv. 412, contains only a partial report.]

2 [Affirmed in 2 Pet. (27 U. S.) 1.]

member of the company); or to show that the company were not the inventors; the defendant's counsel disavowing any intention to impute the invention to the company.

9. A report made to the hose company, in which the rivet hose, the invention patented, is described, cannot be read in evidence to bring the case within the sixth section of the patent law, as that is not a public work.

10. The minutes of other hose companies, of which plaintiffs were not members, cannot be read in evidence by the defendant, for any purpose.

This was an action on the case for the infringement of a patent right. The declaration states that the plaintiffs [Abraham L. Pennock and James Sellers] were the true and original inventors and discoverers of a certain new and useful improvement, in the art of making leather tubes or hose for conveying air, water, and other fluids; which improvement had not been known or used before the said invention by the plaintiffs. It then proceeds to state the steps taken to obtain a patent, as prescribed in the first section of the patent law [1 Stat. 318], and the granting of the patent on the 6th of July, 1818. Upon the plea of not guilty, the defendant [Adam Dialogue] gave a written notice to the plaintiffs, that he should, at the trial, offer evidence tending to prove that the plaintiffs were not the original inventors of the thing patented, but that the same was known and in use before the supposed discovery of the plaintiffs.

The specification sets forth that "the ordinary method of constructing leather tubes or hose, is by securing the two edges together by sewing or stitching. The improvement consists in lapping the edges of the leather so as to form a double thickness in that part, and then connecting them with metallic rivets and burs. The leather near both edges being perforated, rivets, having heads on one end, are inserted in the holes so formed along one edge first; the other edge of the leather is then lapped over and driven on the projected rivets. The rivets then being made through both edges, or thicknesses of the leather, burs of metal about the size and shape of the heads of the rivets, are then forcibly driven on their projecting ends, and secured there by hammering or compressing the ends so as to form heads. The rivets are inserted near each other in one or more rows as occasion may require, and the burs are so forcibly driven, as to bring the parts of the leather into complete and close contact, forming a durable, flexible, and water tight seam; the pressure of the fluid upon the inner lap or edge of the leather, increasing the tightness of the seam. In order to connect several pieces of leather, so as to form a tube or hose of any extent, the ends are cut in an oblique form, and are secured together by rivets and burs in the manner above described."

The defendant's counsel admitted that the defendant had made and used the rivet hose, as described in the specification, since the

date of the plaintiffs' patent, and that the invention was useful. They then gave evidence, tending to prove that the first specimen of hose was procured by the zeal and public spirit, and at the expense of the Philadelphia Hose Company in the year 1811; and that the plaintiffs were not only members of that company, but were on the experimental committees who were charged with the duty of inquiring into and procuring some improved mode of making them. That in that year, a certain quantity of hose was made by order of the committee for that company, by a certain Samuel Jenkins; who stated upon his examination, that he was taught by the plaintiffs in 1811, to make hose, and that by their permission, he made about thirteen thousand feet of hose for different hose companies, from the year 1811 to the time when the patent was granted. They also gave evidence that more than thirty years ago, one Andrews used harness, the parts of which were fastened by metallic rivets and burs. That in the year 1811, an Indian scabbard, used for containing a large knife, was brought to Philadelphia, and was shown to the president of the Philadelphia Hose Company. It was made of sole leather, the edges of which were united and fastened by lead rivets. That before the year 1811, Mr. Bedford made a specimen of hose, in all respects resembling that claimed by the plaintiffs, except that the edges, which were lapped, were fastened by nails with the heads on the inner side, and clinched on the other. This specimen was placed in a domestic warehouse for public examination. Evidence was also given, by John Anderson, that in the year 1799, he, being one of the ship's company of the ship Samuel Smith, made six or seven pieces of hose with scupper leather, and fastened with rivets and burs, which he applied to the scuppers of that ship to convey off the water from the deck; and that in the year 1802, he made another piece of hose in like manner, which he applied to a small fire engine for washing windows, as a substitute for a goose neck, and which was used frequently for the purpose for which it was designed, by the person for whom it was made, and by others.

Upon this evidence the defendant's counsel contended: (1) That the plaintiffs were not the true and original inventors of the improvement in question, but that the same was known and in use before their alleged discovery in 1811; the harness, the scabbard, and the hose constructed by Bedford, and by Anderson, being in principle the same as the patented improvement. That independent of this evidence, the specimen made by one of the plaintiffs was not the effect of the suggestions of either of the plaintiffs, but was brought into existence by the exertions, and at the expense, of the Philadelphia Hose Company; nor was the merit of the invention at any time asserted by the plaintiffs, or either of them. (2) That the patent cov-

ers two rows of rivets, whereas it is proved that another person suggested to the plaintiffs the two rows. (3) That the use of the improvement by the plaintiffs and others, prior to the application for the patent, avoids it under the first section of the patent law; which authorizes the granting of a patent to the true and original inventor of a machine, manufacture, &c. not known or used prior to his application; and that these expressions are not controlled by those to be found in the sixth section. 3 Inst. 183; 5 Bac. Abr. 591, 592; Gods. Pat. 60, 61, 64; Wood v. Zimmer, 1 Holt, N. P. 58. Thomas v. Knight [unreported], decided by Judge Van Nesse, Law Journal, published in Connecticut. (4) That the use by the public of this invention, from 1811 to the time when this patent was applied for, without opposition by the plaintiffs, amounted to an abandonment of their right, and a gift of their discovery to the public. Whittemore v. Cutter [Case No. 17,601]; Evans v. Eaton, 1 Pet. [26 U. S.] 348. Also, Pettibone v. Derringer [Case No. 11,043], in this court. These points were all controverted with great ability by the plaintiffs' counsel; who, upon the last point, insisted, that an abandonment was not to be presumed in this case, inasmuch as it appeared that every foot of hose which had been made prior to the date of the patent, was made by Jenkins, under the permission of the plaintiffs, who thereby retained their control over their discovery.

Chauncey & Binney, for plaintiffs.

J. R. Ingersoll and John Sergeant, for defendant.

WASHINGTON, Circuit Justice. The patent being prima facie evidence, and no more, of the right of the patentee to the subject patented; the one in question is objected to upon the following grounds:

1. That the plaintiffs are not the true and original discoverers of the improvement mentioned in the patent, but that the same was in use prior to their supposed discovery. Evidence having been given that the improvement was in use prior to the date of the patent, the plaintiffs insist that they made the discovery some time in the year 1811, and to establish that fact, they have given the following evidence: Three witnesses, Mr. Haines, Mr. Vaux, and Mr. Wainwright, have stated that the first specimen of rivet hose they ever saw or heard of, was shown to them by one of the plaintiffs, in the year 1811; and Mr. Robins, another witness, who gives the same testimony, has further deposed, that he saw one of the plaintiffs engaged in making the first specimen he had ever seen or heard of; which was completed, and an experiment made of it, in the year 1811.

To the weight and effect of this evidence certain objections have been made by the defendant's counsel, which it is proper we should notice.

It is insisted, first, that the evidence proves no more than that one of the plaintiffs made a specimen of hose in the year 1811, but not that he was the author of the invention, and entitled to the merit of the discovery. The objection does not appear to the court to be well founded, because the fact of making or exhibiting an article never before seen or heard of by the witnesses who 'prove the fact; is at least prima facie evidence of invention, until other evidence is given to prove that the same article was invented, known, or in use, at an antecedent period of time, and that the patentee had only imbodied the conceptions and the discovery of some other person. No evidence of this kind has been given, unless it may be considered as being so by the witnesses whose testimony will be hereafter noticed.

2. It is next objected that the plaintiffs made no experiment of the piece of hose made by them in 1811, but that it was first made by the Philadelphia Hose Company, with a specimen laid before them by the experimental committee. In answer to this objection, it may, in the first place, be remarked, that Mr. Robins has stated that he saw Mr. Pennock try the first specimen made by him; and it may be added, that it is in the highest degree improbable that an inventor should not anxiously seek an opportunity to test by experiment the success and practical utility of the article he has invented, before it is exhibited to the public. But be this as it may, it is clearly immaterial whether the experiment be made by himself, or by others; the only question being, is he the original inventor of an art not before known or used. The hose company do not pretend that they were the inventors; and consequently, the experiment, if first made by them, cannot detract from the merit of plaintiffs, if, in point of fact, they or either of them, was the original inventor.

3. It is insisted that the Philadelphia Hose Company, by their zeal, public spirit, and their money, caused the discovery to be made. This may be admitted; and further, that but for the laudable exertions of that body, the discovery might probably not have been made, either by the plaintiffs, or by any other person, to the present moment. But what has this to do with the question of original discovery? The conduct of the company may entitle them to every kind of merit except that of inventors, but cannot deprive the plaintiffs of that merit, if they were in fact the inventors. Lastly, it is insisted, that the absence of any proof that the plaintiffs or either of them, at any time, to the company, or to their associate members of the experimental committee, or to any other person, claimed to be the inventors of this improvement, is sufficient to outweigh all the evidence of original invention which they have given. It must be admitted that, as an argument upon the weight of evidence, this is fairly urged. It has before been observed,

that the making, or exhibiting the first specimen of hose ever seen or heard of by the witnesses of that fact, is prima facie evidence of the plaintiffs' invention. It is fair then to oppose to that evidence, the total silence of the plaintiffs, or of Mr. Pennock, as to their or his claim of original invention, and to urge the probability, from that circumstance, that they did no more than give form and substance to the invention of some other person. But whether the circumstance is sufficient to outweigh the evidence to which it is opposed, is for the jury to decide.

The defendant has given evidence for the purpose of showing that the improvement in question was invented and in use long before the year 1811; and to enable you to understand and apply this evidence it will be necessary for you constantly to keep in mind what the improvement is which is patented, the mode of constructing it, and the use and design of it. It is for an improvement in making leather hose or tubes for conveying water and other fluids; and they are constructed by lapping their edges over, and fastening them by metallic rivets and burs, so as to be rendered water proof, and capable of resisting a heavy pressure of that fluid. Now, it is for the jury to say whether the harness, the parts of which were fastened by metallic rivets, or the Indian scabbard, which was intended as a covering for a knife, not lapped, but their edges united by lead rivets, is in form, structure, or principle, the same thing as the hose for which this patent was granted? It is true, that, in the construction of those articles, leather, and metallic rivets were employed; but it is clear law, that if old materials, and old principles in mechanics, or otherwise, are used in a state of combination, so as to produce a new result, the inventor of the article so produced is entitled to apply for, and may obtain a valid patent. The hose invented by Mr. Bedford more nearly resembles that which the plaintiffs have patented. It was made of leather, the edges of which were lapped and fastened by nails, having their heads on the inside, and their points clinched on the outside; and its use was, to convey water. Now you have to decide upon the evidence, first, whether a hose made with clinched nails, and one made with rivets and burs, are, in principle, the same;—to prove, and to controvert which fact, specimens of each have been exhibited, and some witnesses examined; and secondly, whether there is any proof that the hose invented by Mr. Bedford was ever in use? If they are the same in principle, but Bedford's was never in use before the plaintiff's invention, then it cannot impeach the validity of their patent. If it was the same in principle, and had been so used, the plaintiffs cannot recover in this action.

The last invention relied upon by the defendant's counsel is that of John Anderson.

He swears that in 1799, he made six or seven pieces of hose on board the Samuel Smith, for conveying water from her deck, and fastened them to her scuppers—that he made them with scupper leather, and fastened them with iron rivets and burs. That, in the year 1802, he made a small fire engine for Mr. M'Callister, with whom he lived, for the purpose of washing his windows; and as a substitute for a goose neck, he made a piece of hose about eighteen inches long, and fastened the edges with metallic rivets and burs; that it was in common use whilst he lived with that gentleman by his family and by his neighbour. The seams he states were water tight, but he does not state in his deposition, whether the edges were lapped over, or merely united. One of the witnesses, who was examined, stated, that the pressure of the water on the inner lap gave to it the character and utility of a valve; and it is for you therefore to say, whether the hose described by Anderson, and that patented, are the same in principle. To contradict this witness in part, six of the crew of the Samuel Smith, in 1799, have been examined, who state, that they never saw the hose spoken of by this witness—that if it had been made and fixed to the scuppers, it could not have escaped their observation; and finally, that hose would not have answered the purpose of scuppers. The character of this witness for veracity, has also been attacked and defended. As to all this, the jury must decide for themselves.

2. The next objection made to this patent is, that it is broader than the discovery, it being proved that the double row of rivets was adopted upon the suggestion of another person. If this be a valid objection, very few patents could be supported; as, in most cases, it might probably be shown, that, whilst the thing patented was constructing, or before it was brought to perfection, many improvements in the form or proportions were adopted in consequence of the suggestions of the mechanic employed to make the specimen, or of others. But these are not inventions or improvements for which a patent could be obtained, nor can they invalidate the patent for the thing to which they were applied.

3. The next objection is, that the hose, having been known and used prior to the application of the plaintiffs for a patent, the patent is void by the terms of the first section of the patent law. Upon this point, which certainly involves much difficulty, we think it unnecessary to give a decision: because we are clearly of opinion, that, if an inventor makes his discovery public, looks on, and permits others freely to use it, without objection, or assertion of claim to the invention, of which the public might take notice, he abandons the inchoate right to the exclusive use of the invention to which a patent would have entitled him, had it been applied for before such use; and we think it makes no difference in the principle, that the article so publicly used, and afterwards patented, was made by a particular individual, who did so by the private permission of the inventor. As long as an inventor keeps to himself the subject of his discovery, the public cannot be injured; and even if it be made public, but accompanied by an assertion of the inventor's claim to the discovery, those who should make, or use the subject of the invention, would at least be put upon their guard. But if the public, with the knowledge, and the tacit consent of the inventor, is permitted to use the invention, without opposition, it is a fraud upon that public afterwards to take out a patent. It is possible that the inventor may not·have intended to give the benefit of his discovery to the public; and may have supposed that, by giving permission to a particular individual to construct for others the thing patented, he could not be presumed to have done so. But it is not a question of intention which is involved in the principle which we have laid down, but of legal inference, resulting from the conduct of the inventor, and affecting the interests of the public. It is for the jury to say whether the evidence brought this case within the principle which has been stated. If it does, the court is of opinion that the plaintiffs are not entitled to a verdict.

Verdict for defendant.

Affirmed by the supreme court upon a writ of error at the January term, 1829. 2 Pet. [27 U. S.] 1.

NOTE. The following points of evidence were ruled in this case: (1) That the minutes of the Philadelphia Hose Company, of which the plaintiffs were members, as they also were of the committee appointed to make inquiries respecting the best method of constructing hose, might be read by the defendant's counsel to prove that the plaintiffs were not the original inventors of the rivet hose, but that they were in use before their alleged invention in 1811: but not to prove that the plaintiffs had surreptitiously obtained a patent for the invention of another person, that forming no part of the notice to the plaintiffs. (2) That the minutes being read for those purposes, the plaintiffs cannot read other entries made in the minute book, to show that the company, at a subsequent period, acknowledged the plaintiffs to be the original inventors of these hose; the defendant not being a member of that company. The written declarations of the company were good against the plaintiffs, but not for them, unless they should be necessary to explain such parts of the transactions and declarations as shall have been read. If part of a statement be read by one side, the other side may insist upon having the whole read. But a subsequent declaration or statement made by the company, does not come within this exception. Neither can the plaintiffs read other parts of the minutes in order to show that that company were not the inventors, or that the invention was not made at their expense; the defendant's counsel having disavowed any intention to claim for the company the merit of the invention; and the latter subject being totally irrelevant to the cause, and we shall so instruct the jury. (3) A report of this company, in which the rivet hose is described, cannot be read to bring it within the sixth sec-

tion of the patent law; because first, the book containing the minutes, is a private and not a public work; and if it were, then secondly, no notice of such a defence has been given to the plaintiffs. (4) The minutes of other hose companies, of which the plaintiffs were not members, cannot be read by the defendant against them for any purpose.